BERDYCK, APPELLEE, *v.* SHINDE, APPELLEE; H.B. MAGRUDER MEMORIAL HOSPITAL, APPELLANT.

[Cite as *Berdyck v. Shinde* (1993), 66 Ohio St.3d 573.]

574

(No. 91–2558—Submitted February 10, 1993—Decided June 30, 1993.)

576

*Jack M. Lenavitt, L.P.A.,* and *Mark L. Schumacher,* for appellee Donna Berdyck.

*Jacobson, Maynard, Tuschman & Kalur, James M. Tuschman, Nancy D. Moody* and *Janis L. Small,* for appellee S.G. Shinde, M.D.

*Manahan, Pietrykowski, Bamman & DeLaney, William F. Pietrykowski* and *H. William Bamman; Robison, Curphey & O'Connell* and *E. Thomas Maguire,* for appellant H.B. Magruder Memorial Hospital.

*Cloppert, Portman, Sauter, Latanick & Foley, Russell E. Carnahan* and *David G. Latanick,* for *amicus curiae,* Ohio Nurses Association.

GRADY, J. This case presents two issues for determination. First, what is the duty of care owed by a nurse to a patient who is admitted under the care of an attending physician to a hospital at which the nurse is employed? Second, does negligence on the part of the attending physician necessarily relieve the hospital of liability for a breach of the nurse's duty of care?

Our review in this case is governed by the standard for granting a motion for summary judgment:

"Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274; *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 117, 522 N.E.2d 489, 505.

Under the doctrine of *respondeat superior,* a hospital is liable for the negligent acts of its employees. *Klema v. St. Elizabeth's Hosp. of Youngstown* (1960), 170 Ohio St. 519, 11 O.O.2d 326, 166 N.E.2d 765. To establish the negligence of a hospital employee, an injured party must demonstrate that a duty of care was owed to the injured party by the employee, that the employee breached that duty, and that the injuries concerned were the proximate result of the breach.

A "duty" is an obligation imposed by law on one person to act for the benefit of another person due to the relationship between them. When risks and dangers inherent in the relationship or incident to it may be avoided by the obligor's exercise of care, an obligor who fails to do so will be liable to the other person for injuries proximately resulting from those risks and dangers if the injuries were reasonably foreseeable. In negligence cases the duty is always the same: to conform to the legal standard of reasonable conduct in the light of apparent risk. What a defendant must do, or must not do, is a question of the *standard of conduct* reasonably required to satisfy the defendant's duty. See Prosser & Keeton on Torts (5 Ed.1984) 356, Section 53.

In general, a standard of "reasonable" conduct implies a minimum standard of care. But, if a condition by its nature requires the application of knowledge and skill superior to that of the ordinary person, one who possesses that superior knowledge and skill and who fails to employ it for the benefit of another when their relation requires it will be held liable for injuries proximately resulting from that failure. Such persons must use the care and skill reasonable in the light of their superior learning and experience, not simply a minimum standard of care. For those persons the relevant standard of conduct is "good practice." See *id.* at 185, 189, Section 32.

The most frequently applied example of persons of superior knowledge and skill who are held to a standard of good practice is that of physicians. The practice of medicine, which includes the diagnosis of an adverse health condition and the prescription of a course of treatment for its management and care, is limited by law to licensed physicians. See R.C. 4731.34. In order to obtain licensure, physicians must demonstrate a level of education and proficiency required by law. See R.C. 4731.09, 4731.091, 4731.11 *et seq.*

The law imposes on physicians engaged in the practice of medicine a duty to employ that degree of skill, care and diligence that a physician or surgeon of the same medical specialty would employ in like circumstances. *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 130, 75 O.O.2d 184, 186, 346 N.E.2d 673, 676. A negligent failure to discharge that duty constitutes "medical malpractice" if it proximately results in an injury to the patient. Whether negligence exists is determined by the relevant standard of conduct for the physician. That standard is proved through expert testimony. *Id.* at 131–132, 75 O.O.2d at 186–187, 346 N.E.2d at 677. Neither the expert nor the standard is limited by geographical considerations. *Id.* at 134–135, 75 O.O.2d at 188, 346 N.E.2d at 679.

Nurses are, and have been since 1915, also subject to licensure by the state. (106 Ohio Laws 191.) Like physicians, professional nurses must demonstrate a level of education and proficiency required by law in order to be licensed. At the time Berdyck was a patient at H.B. Magruder Memorial Hospital in 1986, the practice of professional nursing was defined in R.C. 4723.06:

" 'Practice of professional nursing' means the performance for compensation of acts requiring substantial judgment and specialized skills based on knowledge and application of scientific principles learned in an approved school of professional nursing. Acts of medical diagnosis or prescription of medical, therapeutic, or corrective medical measures by a nurse are prohibited."

The definition of nursing practice was amended in 1988, and is now set forth in more detail in R.C. 4723.02(B).[1] While the current definitional statute does not include a prohibition against medical practice, R.C. 4723.151 now provides: "Medical diagnosis, prescription of medical measures, and the practice of medicine or surgery or any of its branches by a nurse are prohibited." See, also, *Richardson v. Doe* (1964), 176 Ohio St. 370, 27 O.O.2d 345, 199 N.E.2d 878.

Because they are prohibited from practicing medicine, hospitals and nurses cannot pass on the efficacy of a course of treatment. See *Albain v. Flower Hosp.* (1990), 50 Ohio St.3d 251, 259, 553 N.E.2d 1038, 1046. They are, nevertheless, required to assist the physician to do so when the hospital admits the patient for that purpose at the physician's order or request and places the patient in the care of its nursing staff. Then, " * * * accepted standards of nursing practice include a duty to keep the attending physician informed of a patient's condition so as to permit the physician to make a proper diagnosis of and devise a plan of treatment for the patient." *Id.*, 50 Ohio St.3d at 265, 553 N.E.2d at 1051.

In order to fulfill the foregoing duty, nurses must perform a competent nursing assessment of the patient to determine those signs and symptoms presented by the patient that are significant in relation to the attending physician's tasks of diagnosis and treatment. Because nurses are persons of superior knowledge and skill, they must employ that degree of care and skill that a nurse practitioner of ordinary care, skill and diligence should employ in like circumstances. Whether a nurse has satisfied or breached the duties of care owed to the patient is determined by the applicable standard of conduct.

The standard of conduct applicable to this issue is proved by expert testimony. "In a negligence action involving the professional skill and judgment of a nurse, expert testimony must be presented to establish the prevailing standard of care, a breach of that standard, and, that the nurse's

---

1. R.C. 4723.02(B) provides:

" 'Practice of nursing as a registered nurse' means providing to individuals and groups nursing care requiring specialized knowledge, judgment, and skill derived from the principles of biological, physical, behavioral, social, and nursing sciences. Such nursing care includes:

"(1) Identifying patterns of human responses to actual or potential health problems amenable to a nursing regimen;

"(2) Executing a nursing regimen through the selection, performance, management, and evaluation of nursing actions;

"(3) Assessing health status for the purpose of providing nursing care;

"(4) Providing health counseling and health teaching;

"(5) Administering medications, treatments, and executing regimens prescribed by licensed physicians, dentists, and podiatrists;

"(6) Teaching, administering, supervising, delegating, and evaluating nursing practice."

negligence, if any, was the proximate cause of the patient's injury." *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 592 N.E.2d 828, paragraph one of the syllabus. In a negligence action involving conduct within the common knowledge and experience of jurors, expert testimony is not required. *Id.* at 103, 592 N.E.2d at 833. Examples of the latter are allegations of negligence with regard to patients who fell from their hospital beds while unattended. See *Jones v. Hawkes Hosp. of Mt. Carmel* (1964), 175 Ohio St. 503, 26 O.O.2d 170, 196 N.E.2d 592; *Burks v. Christ Hosp.* (1969), 19 Ohio St.2d 128, 48 O.O.2d 117, 249 N.E.2d 829. In this case, as the negligence action brought by Berdyck involves the professional skill and judgment of nurses employed by the hospital, expert testimony is required to prove the relevant standard of conduct.

The hospital admitted that accepted standards of nursing practice require its obstetrical staff nurses to be able to recognize major obstetrical complications, including preeclampsia. Nurse Holzapfel admitted a lack of knowledge of the symptoms of preeclampsia when Berdyck was admitted. Dr. Harlan Giles, an expert witness for Berdyck, opined essentially that standard nursing care requires that an obstetrical nurse be aware of the signs and symptoms of preeclampsia and that Nurse Pickett lacked an appropriate basic level of nursing information about that condition and its symptoms.

Patricia Sexton–Zgrabik, R.N., an obstetrical nurse called as an expert witness for Berdyck, stated that a nurse presented with Berdyck's pregnant condition and symptoms should be concerned about the possibility of a seizure and should watch the patient very closely. The nurse should assess the patient's reflexes and monitor the blood pressure continuously. The nurse should also institute measures to protect against seizure, including having an oral airway or tongueblade available, padding the bed side rails, darkening the room, and positioning the patient on her left side to aid the reduction of blood pressure. The nurse should also have magnesium sulfate readily available. The witness testified that Nurse Pickett's failure to perform these procedures was conduct below that required by the applicable standard of care, and that the hospital was negligent in not providing personnel trained in the measures necessary.

Dr. William Rayburn, an expert witness for the hospital, opined that the acts of the hospital's nurses did not directly cause Berdyck's seizure, but he conceded that in their care of Berdyck the nurses at the hospital failed to comply with the standard of care required by that hospital's rules and regulations for nursing service. Dr. Rayburn stated that a reasonably prudent and careful nurse would have reported the symptoms of headache, persistent vomiting, epigastric pain, decreased urine output, edema, and high

blood pressure to the attending physician. He also conceded that Nurse Pickett did not possess the minimum knowledge of obstetrics reasonably required of a nurse placed in charge of a hospital obstetrics unit.

Dr. Christopher Marlowe, an expert witness for Dr. Shinde, testified that Nurse Pickett did not give Dr. Shinde "anywhere near enough information to form an opinion as to what was going with his patient."

The foregoing testimony, if believed, demonstrates that the hospital's nurses failed to perform their duties according to the applicable standard of conduct. Failure to conform to that standard of conduct is evidence that the nurses, and the hospital employing them, breached the duty they owed their patient to exercise that degree of care and skill that the condition of the patient reasonably required.

Appellant hospital argues that the court of appeals erred when it held that the standard of conduct required of a nurse is that applicable to nurses in the community. We do not understand the court to have imposed a locality rule in its use of the term "community." Rather, the court was concerned with the community of persons engaged in the practice of professional nursing. As with physicians, geographical considerations or circumstances do not control when identifying that community. See *Bruni v. Tatsumi, supra.* However, the statutory standards for licensure are relevant to the standard of conduct required of licensed nurses in Ohio, and may be used to prove that standard.

Appellant hospital also argues that the court of appeals misconstrued the rule of *Albain v. Flower Hosp., supra,* when it held that nurses are held to a greater accountability than informing physicians and following their orders. We see no error in the view of the court of appeals. *Albain* held that the hospital and its employees have a duty to follow the orders of an attending physician, of which the duty to keep the physicians informed is an integral part, but that merely following the orders of a physician is not the full extent of the duty of care owed to a patient by a nurse. *Id.* at 264–265, 533 N.E.2d at 1050–1051. In order to satisfy that duty to its full extent, a nurse must perform a competent nursing assessment of the patient's condition according to the standards of conduct required of a nurse practitioner. The evidence, if believed, reasonably permits a conclusion that the nurses here failed in that duty.

Appellee Berdyck also argues that the hospital is liable for the failure of its nurses to seek definitive care to prevent the injuries she suffered. Appellee is joined in this view by *amicus* Ohio Nurses Association, which urges adoption of a rule requiring licensed nurses to advocate on behalf of their patients when they do not receive the care their condition requires so as to obtain that care for them.

Both physicians and nurse practitioners are persons who have undertaken work calling for special skill. Both are required not only to exercise reasonable care in what they do, but also to possess a standard minimum of special knowledge and ability for persons in their callings. However, their respective duties to the patient differ because their respective relationships with the patient are different. Correspondingly, the standard of conduct required of each—what each must do or not do to satisfy his or her duties—will differ.

The law imposes on the physician the exclusive duty to diagnose the patient's adverse health condition and to prescribe a course of treatment for its management and care. Nurse practitioners employed by a hospital to which the patient is admitted by an attending physician are under a duty to support that process. The standard of conduct required of a nurse cannot include the process of medical diagnosis and treatment, which is reserved to the physician. Nevertheless, the fact that a particular act is within a physician's duty of care does not necessarily exclude it from the duty of care owed to the patient by the nurse. Depending on the facts and circumstances, the same act may be within the scope of their separate duties of care because it is, coincidentally, within their respective standards of conduct. Whether it is or is not is a question of fact to be determined by the standard of conduct required, which is proved by expert testimony.

A nurse who concludes that an attending physician has misdiagnosed a condition or has not prescribed the appropriate course of treatment may not modify the course set by the physician simply because the nurse holds a different view. To permit that conduct would allow the nurse to perform tasks of diagnosis and treatment denied to the nurse by law. *Richardson v. Doe, supra.* However, the nurse is not prohibited from calling on or consulting with nurse supervisors or with other physicians on the hospital staff concerning those matters, and when the patient's condition reasonably requires it the nurse has a duty to do those tasks when they are within the ordinary care and skill required by the relevant standard of conduct. Of course, hospitals, and the nurses they employ, owe a duty to every patient whom they admit to save the patient from an illegal operation or false, fraudulent, or fictitious medical treatment. *Albain v. Flower Hosp., supra,* 50 Ohio St.3d at 259, 553 N.E.2d at 1046. That is not an issue here, however.

Appellee Berdyck's expert witness Patricia Sexton–Zgrabik testified that a nurse trained to recognize preeclampsia and seeing the symptoms presented by Berdyck would, in the event of the failure of the attending physician to deal with them, seek the timely intervention of another physician. She also testified that a reasonably prudent nurse who observed these repeated high

blood pressures would take action to override the physicians' orders and invoke the necessary treatment protocol.

Whether the standard of conduct articulated by this expert witness governs the nurses' duties of care is a question of fact, determined from all relevant facts and circumstances. The trier must determine whether the course the witness recommends is reserved to the practice of medicine and, therefore, outside the duties of a nurse. However, as the same witness testified that the nurses in this case negligently failed to recognize the symptoms of preeclampsia, it is hypothetical, at best, to require them to act to prevent that which they did not know. Of course, their failure to recognize the condition may in itself produce liability if it is shown to be a proximate cause of the injury.

Viewing the evidence as Civ.R. 56(C) requires, we conclude that a genuine issue of material fact exists concerning whether the nurses employed by the hospital were required by the duty of care they owed Berdyck to inform Dr. Shinde of Berdyck's condition otherwise than as they did and/or to respond to and follow the orders they were given by Dr. Shinde other than as they did.

Appellant hospital also argues that Dr. Shinde's admission of negligence makes the hospital's negligence, if any, remote to the injuries sustained by Berdyck, not actionable, and relieves the hospital of any liability.

Dr. Shinde stipulated that he was negligent in not going to the hospital when he received a call from Nurse Pickett at 4:00 a.m., and that his negligence was a proximate cause, though not the sole proximate cause, of Berdyck's injuries. Dr. Shinde also stated that had Nurse Pickett given him a fuller report of Berdyck's symptoms he would more likely have been alerted to suspect preeclampsia.

The intervention of a responsible human agency between a wrongful act and an injury does not absolve a defendant from liability if that defendant's prior negligence and the negligence of the intervening agency co-operated in proximately causing the injury. If the original negligence continues to the time of the injury and contributes substantially thereto in conjunction with the intervening act, each may be a proximate, concurring cause for which full liability may be imposed. "Concurrent negligence consists of the negligence of two or more persons concurring, not necessarily in point of time, but in point of consequence, in producing a single indivisible injury." *Garbe v. Halloran* (1948), 150 Ohio St. 476, 38 O.O. 325, 83 N.E.2d 217, paragraph one of the syllabus.

In order to relieve a party of liability, a break in the chain of causation must take place. A break will occur when there intervenes between an agency creating a hazard and an injury resulting therefrom another conscious and responsible agency which could or should have eliminated the hazard. *Hurt*

*v. Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 323, 58 O.O. 119, 130 N.E.2d 824, paragraph one of the syllabus; *Thrash v. U–Drive–It Co.* (1953), 158 Ohio St. 465, 49 O.O. 402, 110 N.E.2d 419, paragraph two of the syllabus. However, the intervening cause must be disconnected from the negligence of the first person and must be of itself an efficient, independent, and self-producing cause of the injury.

Thus, we hold that the intervening negligence of an attending physician does not absolve a hospital of its prior negligence if both co-operated in proximately causing an injury to the patient and no break occurred in the chain of causation between the hospital's negligence and the resulting injury. In order to break the chain, the intervening negligence of the physician must be disconnected from the negligence of the hospital and must be of itself an efficient, independent, and self-producing cause of the patient's injury.

The evidence, construed most strongly against defendant-appellant hospital as required by Civ.R. 56(C), reasonably permits a conclusion that the negligence admitted by Dr. Shinde and the possible negligence of the hospital may be concurring proximate causes of Berdyck's injuries. Therefore, the hospital is not entitled to summary judgment on the issue.

The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT and PFEIFER, JJ., concur.

F.E. SWEENEY, J., concurs in judgment only.

THOMAS J. GRADY, J., of the Second Appellate District, sitting for RESNICK, J.