DILLON et al., Appellants,

v.

MEDICAL CENTER HOSPITAL, Appellee.

[Cite as *Dillon v. Med. Ctr. Hosp.* (1993), 98 Ohio App.3d 510.]

Court of Appeals of Ohio,
Ross County.

No. 1942.

Decided Sept. 24, 1993.

*Spetnagel & Benson* and *Thomas M. Spetnagel,* for appellants.

*Bricker & Eckler* and *Michael J. Renner,* for appellee.

PETER B. ABELE, Judge.

This is an appeal from a partial summary judgment entered by the Ross County Common Pleas Court, finding that Ova L. Dillon, Jr. ("appellant") and Mary Elizabeth Dillon, appellants herein and plaintiffs below, had failed to establish a genuine issue of material fact concerning whether the Medical Center Hospital ("hospital"), defendant below and appellee herein, is liable for the alleged negligence of its nurses for failing to take and record hourly circulation checks of Ova Dillon's left foot.

Appellant assigns the following error:

"The lower court erred in granting Medical Center's motion for summary judgment on the grounds that there is not any genuine issue as to whether the negligence of the nurses proximately caused Ova L. Dillon, Jr.'s injuries."

We glean the following facts from the parties' briefs and the lower court's judgment entry.[1] On January 22, 1988, appellant Ova L. Dillon, Jr. suffered injuries to his left leg when he fell from the back of a truck. Appellant went to the hospital's emergency room for treatment. Doctors placed a cast on his leg and admitted him to the hospital.

On January 23, 1988, appellant developed circulation problems in his left foot. The circulation improved after Dr. Max Hickman ordered the cast pressure

---

1. Although the court considered depositions filed in a previous action between appellant and the physicians involved in treating appellant, the parties did not file those depositions in this action.

   Civ.R. 56(C) states that when determining summary judgment motions, courts may consider only "pleading[s], depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact." The depositions filed in the parties' previous case do not fall into any of the Civ.R. 56(C) categories.

   The parties, however, did not object to the fact no one filed the depositions in this case. By failing to object at the trial level, the parties have waived any error on appeal. See, generally, *Boydston v. Norfolk S. Corp.* (1991), 73 Ohio App.3d 727, 598 N.E.2d 171, motion to certify overruled in, 62 Ohio St.3d 1472, 580 N.E.2d 1101; *Gaumont v. Emery Air Freight Corp.* (1989), 61 Ohio App.3d 277, 572 N.E.2d 747; *Rodger v. McDonald's Restaurants of Ohio, Inc.,* (1982), 8 Ohio App.3d 256, 8 OBR 347, 456 N.E.2d 1262; *Richards v. Paterek* (Dec. 1, 1989), Geauga App. No. 88-G-1481, unreported, 1989 WL 146429; *Rambo v. E.B.P., Inc.* (Oct. 19, 1989), Cuyahoga App. No. 55658, unreported, 1989 WL 125149.

reduced. During the next two days, appellant experienced more circulation problems. On January 24, 1988 at 3:50 p.m., nurses notified Dr. George Boll that appellant's circulation problems had worsened. Dr. Boll ordered the nurses to raise appellant's leg four inches. The nurses complied, and appellant's circulation improved.

On January 25, 1988 at 8:25 a.m., Dr. Boll examined appellant and wrote "toes are cool and getting number" on his progress notes. Twelve hours later, Dr. Boll removed the top of appellant's cast. Although circulation initially appeared to be returning to appellant's left foot, three hours later additional circulatory problems developed. Nurses contacted Dr. Hickman on January 26, 1988, at 2:00 a.m. about the problems. Dr. Hickman arrived at the hospital at 5:00 a.m. and determined that appellant suffered from compartment syndrome. At 5:30 a.m. Dr. Hickman performed a fasciotomy. Despite that surgery and more surgery performed a week later, compartment syndrome complications continued until other doctors amputated appellant's leg on October 13, 1988.

On January 24, 1989, appellant filed a medical malpractice action against Dr. Hickman and the hospital. In an amended complaint filed on June 1, 1989, appellant added Dr. Boll to that action. On July 18, 1991, appellant voluntarily dismissed the hospital from the action without prejudice. On October 2, 1991, appellant, Dr. Hickman and Dr. Boll filed an agreed entry dismissing appellant's claims against the physicians.

On September 3, 1991, appellant filed the instant action against the hospital, alleging "agents and employees" of the hospital "negligently cared for and treated" appellant. The hospital filed an answer noting that the physicians who treated appellant are not employees or agents of the hospital.

On August 18, 1992, the hospital filed a motion for summary judgment, noting that no one has ever alleged that its employees and agents conveyed insufficient information to the physicians, or otherwise caused them to commit malpractice. The hospital argued that Dr. Ian Blair Fries, appellant's expert witness in the previous action, testified by deposition that medical negligence occurred when Dr. Boll and Dr. Hickman failed to perform the fasciotomy in a timely manner. According to Dr. Fries, rather than ordering appellant's leg to be raised four inches at 3:50 p.m. on January 24, 1988, Dr. Boll should have performed the surgery at that point. The sole criticism that Dr. Fries made of the nursing staff was that they failed to chart their hourly circulation checks of appellant's leg.

In the motion for summary judgment, the hospital aptly noted that because appellant's medical expert Dr. Michael Ruff testified that according to appellant's medical records Dr. Boll should have performed the surgery at 3:50 p.m. on January 24, 1988, Dr. Ruff impliedly found the medical records to be adequate. In other words, Dr. Ruff impliedly found that the nurses' failure to chart the

hourly circulation checks did not cause Dr. Boll's failure to perform surgery at 3:50 p.m.

In response to the hospital's motion for summary judgment, appellant argued that medical expert Dr. Dennis B. Brooks's affidavit stated that the nurses' failure to chart their circulatory checks proximately caused appellant's injuries. Dr. Brooks stated as follows in his affidavit:

"(a) That the nurses at the Chillicothe Medical Center failed to exercise the standard of care in taking and recording hourly circulatory checks of the patient's left foot;

"(b) In particular, on Sunday, January 24, 1988, from 7:55 a.m. through 3:50 p.m., only three circulation checks were performed during an approximately 8 hour shift;

"(c) That the circulatory embarrassment documented at 3:50 p.m. on Sunday, January 24, 1988, would most likely have been developing and showing clinical signs earlier that day which should have been discovered by a reasonably prudent circulatory check;

"(d) That had proper and more frequent circulatory checks been conducted and recorded earlier in the day on January 24, 1988, and had they been reported to the physician, *a reasonably prudent surgeon would have* altered the treatment provided this patient by coming to the hospital and making his own assessment;

"(e) In particular, *a reasonably prudent physician should then have* examined the patient himself, conducted his own circulatory check and passive stretch test of the foot, and taken off the top portion of the cast. If these tests had confirmed that the patient was developing compartment syndrome, and compartment pressure monitoring equipment was unavailable, *a reasonably prudent surgeon should have* performed an emergency fasciotomy on January 24, 1988 to relieve the developing compartment syndrome." (Emphasis added.)

Appellant also noted that Dr. Fries, in his deposition, stated that if a fasciotomy had been done on or before January 24, 1988, at 3:50 a.m., then "in all likelihood the compartment syndrome could have been resolved."

The hospital replied by noting that Dr. Brooks's affidavit confirms that the a fasciotomy should have been performed at 3:50 p.m. on January 24, 1988 *after the nurses notified Dr. Boll* of appellant's condition at that time. Once again, the hospital argues that Dr. Brooks, when preparing his affidavit, obviously found the nurses' records to be sufficient to tell him appellant's condition at 3:50 p.m. on January 24, 1988. The hospital notes that Dr. Boll, in his deposition, testified that not only did he fail to diagnose appellant's compartment syndrome at that time, *but he also failed to diagnose the syndrome a day later.* Thus, the hospital argues, the nurses' actions caused appellant no harm.

In reply, appellant wrote in pertinent part:

"More troubling appears to be [the hospital's] suggestion that the subsequent negligence of a physician as a matter of law would always relieve the negligence of a nurse whose conduct contributed to the ultimate result, in this case, the failure to perform a fasciotomy."

In yet another reply brief, the hospital cited *Albain v. Flower Hosp.* (1990), 50 Ohio St.3d 251, 553 N.E.2d 1038, where the court focused *not* on what a hypothetical "reasonably prudent physician" would have done with adequate information from the nurses, but rather focused on what the actual attending physician would have done with adequate information from the nurses. The hospital, in effect, argued that *Albain* thus permits the subsequent negligence of a physician to relieve the negligence of a nurse.

On January 21, 1993, the court granted the hospital's motion for summary judgment on the issue of whether it is liable for the alleged negligence of its nurses for failing to take and record hourly circulation checks of appellant's left foot. The court expressly noted that there is no just reason to delay appeal.[2]

Appellants filed a timely notice of appeal.

█ In their sole assignment of error, appellants assert that the court erred by granting the hospital's motion for summary judgment. Summary judgment is appropriate when the movant demonstrates (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, said party being entitled to have the evidence construed most strongly in his favor. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 884; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. The moving party bears the burden of proving no genuine issue of material fact exists. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801.

█ When reviewing a summary judgment, an appellate court must independently review the record to determine if summary judgment was appropriate. An appellate court need not defer to the trial court's decision in summary

---

2. We note that during the course of the proceedings below, neither the parties nor the court addressed any issues concerning other possible negligence by appellee's agents and employees. Nevertheless, appellant's complaint could cover more than just the issue resolved by the summary judgment. Due to the broad nature of the complaint, and due to the fact the court below employed the Civ.R. 54(B) partial judgment language "no just reason for delay," we view the judgment below as a partial judgment.

judgment cases.  See *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 599 N.E.2d 786.

In *Albain* the court wrote that a plaintiff suing a hospital for the negligence of its nurses must prove that the attending physician would have altered the course of diagnosis or treatment in the absence of the nurse's negligence.  The court wrote:

"Even assuming that a nurse breached this duty to inform the attending physician of a patient's condition, it must be further shown that such breach was the proximate cause of the patient's injury before the hospital will be held vicariously liable therefor.  Thus, a plaintiff must prove that, had the nurse informed *the attending physician* of the patient's condition at the proper time, *the physician would have altered his diagnosis or treatment* and prevented the injury to the patient."  (Emphasis added.)  *Id.,* 50 Ohio St.3d at 265, 553 N.E.2d at 1051.

In the case *sub judice,* appellant appears to concede that the depositions demonstrate the *attending physicians* would *not* have altered their diagnosis or treatment if the nurses had charted hourly circulation checks.  Appellant argues, however, that Dr. Brooks, in his affidavit, stated that a *reasonably prudent physician* would have altered the diagnosis or treatment.  Thus, appellant contends, the nurses' failure to chart hourly circulation checks was a "substantial factor" in causing appellant's injuries.  Appellant urges us to hold that the physicians' subsequent negligence should not be permitted to absolve the nurses of their negligence.

In *Berdyck v. Shinde* (1993), 66 Ohio St.3d 573, 613 N.E.2d 1014, paragraph six of the syllabus, the court addressed the question of whether the intervening negligence of a physician absolves a hospital and its nurses of their negligence:

"The intervening negligence of an attending physician does not absolve a hospital of its prior negligence if both co-operated in proximately causing an injury to the patient and no break occurred in the chain of causation between the hospital's negligence and the resulting injury.  In order to break the chain, the intervening negligence of the physician must be disconnected from the negligence of the hospital and must be of itself an efficient, independent, and self-producing cause of the patient's injury."

The court further explained that in order for the two negligences to co-operate in proximately causing the injury, the original negligence must continue in consequence until the time of the injury.  The court wrote in pertinent part:

"The intervention of a responsible human agency between a wrongful act and an injury does not absolve a defendant from liability if that defendant's prior negligence and the negligence of the intervening agency co-operated in proxi-

mately causing the injury. If the original negligence continues to the time of the injury and contributes substantially thereto in conjunction with the intervening act, each may be a proximate, concurring cause for which full liability may be imposed. 'Concurrent negligence consists of the negligence of two or more persons concurring, not necessarily in point of time, but in point of consequence, in producing a single indivisible injury.' * * *

. "In order to relieve a party of liability, a break in the chain of causation must take place. A break will occur when there intervenes between an agency creating a hazard and an injury resulting therefrom another conscious and responsible agency which could or should have eliminated the hazard. * * * However, the intervening cause must be disconnected from the negligence of the first person and must be of itself an efficient, independent, and self-producing cause of the injury." *Id.*, 66 Ohio St.3d at 584–585, 613 N.E.2d at 1024–1025.

In *Berdyck*, the court found evidence that the nurses' negligence continued to cause the plaintiff's injuries. The *Berdyck* doctor, who admitted that his negligence at 4:00 a.m. proximately caused the plaintiff's injuries, stated that if the nurse had subsequently given him a fuller report of the patient's symptoms, he would have suspected the patient's true condition.

In the case *sub judice*, when we construe the evidence most strongly in favor of appellant, we find that as a matter of law the nurses' alleged negligence did not co-operate with the physicians' negligence to proximately cause appellant's injuries. The nurses' alleged negligent acts all occurred before 3:50 p.m. on January 24, 1988. Dr. Boll and Dr. Hickman committed negligent acts not only on that day, but also during the next two days when, despite the absence of negligence by others, they failed to properly diagnose and timely treat appellant's further developing compartment syndrome. The physicians' continued acts of negligence operated to break the chain of causation between the nurses' acts and appellant's injuries. After 3:50 p.m., the nurses committed no negligent acts co-operating with the physicians' negligent acts.

Accordingly, based upon the foregoing reasons we overrule appellants' assignment of error. The judgment of the trial court is affirmed.

*Judgment affirmed.*

STEPHENSON and GREY, JJ., concur.