STURM et al., Appellants; Sturm,

v.

UNIVERSITY OF CINCINNATI MEDICAL CENTER, Appellee.

[Cite as *Sturm v. Univ. of Cincinnati Med. Ctr.* (2000), 137 Ohio App.3d 557.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 99AP–699.

Decided April 4, 2000.

*Lindhorst & Dreidame* and *Michael F. Lyon,* for appellants.

*Betty D. Montgomery,* Attorney General, and *Karl W. Schedler,* Assistant Attorney General, for appellee.

———————

BOWMAN, Presiding Judge.

Plaintiff-appellant, John D. Sturm, and his parents, Robert N. and Laura Sturm, filed suit against defendant-appellee, University of Cincinnati Medical Center, Hoxworth Blood Center, based on appellee's alleged negligence. The case was tried in the Ohio Court of Claims on the sole issue of liability, and the court rendered judgment in favor of appellee. Appellants John D. Sturm and Robert N. Sturm appeal the judgment of the Court of Claims and present the following assignment of error for review:

"The trial court erred to the prejudice of plaintiff/appellant by deciding the case upon the law of medical malpractice instead of ordinary negligence."

On December 31, 1985, John Sturm, who was then eleven years old, underwent surgery at Children's Hospital Medical Center in Cincinnati. During the surgery, John received one unit of packed red blood cells provided by appellee Hoxworth, which is operated by appellee University of Cincinnati. In March 1994, John learned that he had hepatitis C. In an effort to learn the source of John's infection, his father contacted Children's regarding the donor of the blood John had received. In July 1994, the donor tested positive for the hepatitis C virus, although the liver enzyme alanine aminotransferase ("ALT") levels were not elevated. There is no evidence as to when the donor contracted hepatitis C.

Appellants' complaint alleges that Hoxworth negligently procured the blood John received and that, as a direct and proximate result of this negligence, John was infected with hepatitis C. Appellants provided several arguments in support of their negligence claim against Hoxworth, including Hoxworth's failure to take reasonable and appropriate steps to screen potential donors and test specific blood for ALT.

Although not yet identified as hepatitis C, by the mid–1970s it was known that not all cases of transfusion-associated hepatitis were hepatitis A or hepatitis B; the term non-A, non-B ("NANB") hepatitis was coined for this illness. The name hepatitis C was not used until around 1989. The first test for hepatitis C was introduced in 1990.

In 1981, two papers were published reporting the findings of two comprehensive studies designed to identify factors in donors that might reduce the occurrence of NANB posttransfusion hepatitis. One paper, authored by Dr. Aach et al., was published in the New England Journal of Medicine. The second paper,

authored by Dr. Alter et al., was published in the Journal of the American Medical Association. Both studies found a correlation between NANB posttransfusion hepatitis and an elevated ALT level. The studies found that ALT testing could prevent anywhere from thirty to fifty percent of posttransfusion NANB hepatitis; however, there was also a fairly high rate of false positives. These studies raised questions about requiring all blood to be screened for elevated ALT.

The trial court identified the central issue to be whether Hoxworth's decision not to test ALT levels was reasonable in light of the standard of recognized care in 1985. Despite both parties' position that the case should be decided under the law of ordinary negligence, the trial court determined that the question of whether the reasonable standard of conduct in 1985 called for testing ALT levels necessarily involved a degree of professional skill and judgment. Accordingly, the court determined that appellants' claim involved professional malpractice. Thus, the court found that appellants needed to establish by expert testimony what a medical professional of ordinary skill, care, and diligence in the same medical specialty would do in similar circumstances.

Dr. Herbert Polesky provided expert testimony by deposition on behalf of appellee. Polesky has been the Director of the Memorial Blood Center of Minnesota since 1964. Polesky was familiar with the two papers correlating elevated ALT levels in donors with NANB hepatitis, but did not initiate routine ALT testing of blood donors in response to the articles. Polesky testified that the usefulness of ALT testing was not established and the advisability of initiating ALT testing was controversial. There was much discussion in the blood transfusion profession about ALT testing between the publication of the papers and December 1985. Polesky explained that there are many reasons unrelated to hepatitis for an elevated ALT, including recent alcohol consumption, exercise, some over-the-counter drugs, weight, and gender. Polesky noted that blood was often in short supply and throwing away blood that was actually not infected with NANB hepatitis but had elevated ALT levels posed a problem. Polesky believed that throwing away false-positive blood was a bigger problem than detecting the small amount of blood that was actually infected with NANB hepatitis. Polesky noted that, in December 1985, neither the American Association of Blood Banks ("AABB") nor the FDA required routine testing of donated blood for elevated ALT levels as a means of screening for NANB hepatitis. Polesky also noted that Alter published a follow-up paper in 1984 revealing that screening of ALT levels, initiated as a result of the earlier first study, had not caused a change in rates of NANB hepatitis.

Polesky opined that Hoxworth did not deviate from acceptable standards of practice with regard to the collection of the blood that John received in 1985. In

his opinion, it was not unreasonable or imprudent for Hoxworth to collect this blood without testing it for elevated ALT, because at the time the usefulness of such screening had not been established. Polesky stated that Memorial Blood Center began testing ALT levels in November 1986, after the AABB recommended ALT testing in its standards. In 1987, the FDA established operating standards that included routine ALT testing.

Johanna Pindyck testified by deposition as the expert witness on behalf of appellants. Pindyck became Director of the Greater New York Blood Program in 1979, and was also Vice-President of the New York Blood Center. Pindyck testified that, in 1985, her blood center was one of four blood centers in the country testing for elevated ALT levels; Hoxworth was not one of these centers. Pindyck testified that, based upon her education, training, experience, and review of the materials, she found that the practice of not screening for ALT levels was not appropriate, reasonable, or prudent, and that Hoxworth's following this standard was an unreasonable practice. Pindyck further testified, as a matter of reasonable medical certainty, that Hoxworth should have been testing ALT levels as early as 1982. Pindyck opined that Alter's 1984 article, in which he reported that he had seen no change in recipient hepatitis as a result of initiating ALT screenings, was incorrect and further opined that the FDA's failure to recommend routine ALT testing in December 1985 was a tragic error.

Based upon the expert testimony, and the controversy among transfusion medicine specialists over the usefulness of ALT testing in 1985, the court found that Hoxworth's decision not to test ALT levels was reasonable and did not deviate from the standard of care. In support of its finding, the court noted the undisputed facts that the vast majority of blood centers in 1985 did not test ALT levels and that the testing was only thirty to fifty-percent effective and excluded false positives. Therefore, the court found that Hoxworth had not breached the duty of care it owed appellants.

On appeal, appellants assert that the trial court improperly analyzed their claim under principles of medical malpractice rather than ordinary negligence. Appellants contend that, had the trial court properly applied ordinary negligence principles, it would have analyzed whether the practice of not testing ALT levels in and of itself was reasonable, careful, cautious and prudent. However, appellants argue, because the court applied the wrong law, it focused its efforts on identifying the standard of care in the medical community of blood banks and failed to consider whether this standard was negligent.

Under the law of negligence, a defendant must conform to the legal standard of reasonable conduct in light of the apparent risk. *Berdyck v. Shinde* (1993), 66 Ohio St.3d 573, 578, 613 N.E.2d 1014, 1020. When a situation calls for knowledge and skill superior to that of an ordinary person, persons who possess

this superior knowledge and skill must use that degree of care and skill that is reasonable in light of their superior learning and experience. *Id.* at 579, 613 N.E.2d at 1020–1021. This standard of conduct is referred to as "good practice." *Id.* Physicians are a common example of persons of superior knowledge and skill held to the standard of good practice. Thus, a person of superior knowledge and skill must employ that degree of care and skill that a person of the same learning and experience of ordinary care, skill, and diligence should employ in like circumstances. *Id.* at 580, 613 N.E.2d at 1021–1022. The relevant standard of good practice must be proven through expert testimony. *Id.* at 579, 613 N.E.2d at 1020–1022.

Appellants rely on *Morse v. Riverside Hosp.* (1974), 44 Ohio App.2d 422, 73 O.O.2d 537, 339 N.E.2d 846, as support for their position that the question of appellee's negligence should be evaluated under the law of ordinary negligence rather than medical malpractice; however, a close reading of *Morse* does not support this position. In *Morse*, the plaintiff, who had contracted hepatitis from a blood transfusion, filed a complaint setting forth counts based upon negligence, breach of warranty, and strict liability in tort. The plaintiff attempted to base her negligence counts on alleged violations of the Ohio Pure Food and Drug Law. In the context of rejecting the plaintiff's basis for her negligence claims, the court acknowledged that the law of negligence was a proper basis for an action to recover damages for injuries resulting from a blood transfusion. The court identified several bases for finding a blood bank liable in negligence, including the failure of a blood bank "to perform the HAA test [a test for a hepatitis associated antigen] or other tests recognized by experts in the field of blood transfusions, *provided experts qualified in this field testify that the failure to perform such test is a departure from the standards of reasonable care in the community.*" (Emphasis added.) *Id.* at 426, 73 O.O.2d at 539, 339 N.E.2d at 850. Thus, *Morse* is consistent with the law applied by the Court of Claims and set forth in *Berdyck.*

■ In light of the trial court's undisputed determination that some professional skill and judgment were necessary to decide whether testing for ALT levels in 1985 was required by the standard of reasonable conduct recognized at the time, the trial court properly applied the standard of conduct as set forth in both *Berdyck* and *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673.

■ Appellants have also argued that the trial court erroneously failed to consider whether the standard of not testing for ALT was careful, cautious, and prudent. Essentially, appellants argue that the trial court should have accepted Pindyck's opinion on what the proper standard of care required rather than Polesky's. Whether the standard in 1985 required ALT rests on the trial court's

decision as to which expert witness was more credible. Pindyck's testimony supports finding that blood centers of ordinary skill and diligence should have been testing for elevated ALT, while Polesky's testimony supports an opposite finding. Which opposing testimony on the standard of conduct should be adopted is a question of fact. *Berdyck* at 584, 613 N.E.2d at 1024–1025.

The trial court chose the standard advocated by appellee's expert, Polesky, and this court finds no abuse of discretion by the court in so finding. Polesky's position was consistent with AABB and FDA requirements and took into account both the benefits and detriments of ALT testing. Additionally, the customary practice among the majority of blood centers at the time was not to test ALT levels. As the trial court noted, while not conclusive evidence of the proper standard of care, custom is evidence of what a reasonably prudent medical provider would do under similar circumstances. Thus, the customary practice provides further support for the standard of care advocated by Polesky and adopted by the court. On the other hand, the standard advocated by appellants and their expert did not consider the detriments of ALT testing and disagreed with the FDA's position and the 1984 study by Alter.

For the above reasons, the trial court properly found that appellee did not breach its duty of care to appellants. Appellants' assignment of error is overruled, and the judgment of the Ohio Court of Claims is affirmed.

*Judgment affirmed.*

TYACK and PEGGY BRYANT, JJ., concur.