**Rosalie DEVONSHIRE, Plaintiff**

v.

**THE JOHNSTON GROUP FIRST ADVISORS, et al., Defendants.**

**No. 3:02CV7223.**

United States District Court,
N.D. Ohio,
Western Division.

Dec. 29, 2003.

---

Richard M. Kerger, Kerger & Kerger, Toledo, OH, for Rosalie Devonshire, Plaintiff.

Andrew J. Dorman, Brian T. McElroy, Jonathan W. Philipp, Janik & Dorman,

Cleveland, OH, for The Johnston Group First Advisors, Bradley M. Johnston, Defendants.

## ORDER

CARR, District Judge.

This is a negligence and breach of contract case in which plaintiff Rosalie Devonshire claims that defendants The Johnston Group First Advisors and Bradley Johnston mishandled her securities accounts by failing to follow a conservative investment plan. This court has jurisdiction pursuant 28 U.S.C. § 1332. Pending is defendants' motion for summary judgment. For the following reasons, that motion will be granted.

## BACKGROUND

In 1994, plaintiff Rosalie Devonshire and her ex-husband, David Devonshire, executed an Investment Advisor Agreement with defendant Bradley Johnston and his firm, The Johnston Group, and opened a joint Charles Schwab brokerage account, which was to be managed by defendant. Devonshire's then-husband, David, communicated with defendant about that account on the couple's behalf. Plaintiff met with defendant at least once, but did not communicate with him regarding the brokerage account. She says that she was "totally uneducated about ... financial stuff." (Doc. 28 Exh. B, at 71).

In 1996, plaintiff opened an individual brokerage account, which was also managed by defendant and handled by David. Plaintiff had no contact with defendant during this time, allowing David to give directions to defendant on her behalf.

In May, 1999, plaintiff filed for divorce from David. Plaintiff and David agreed to a property settlement through which David would transfer a set amount of cash, securities, and equity funds from his indi-

vidual account and the couple's joint account into plaintiff's individual account, which she still held with defendant.

On September 29, 2000, plaintiff met with defendant to discuss her plans for her investments following her divorce. Defendant understood this to be a meeting in which he would get to know plaintiff and learn of her investment objectives. He also alleges that he wanted to persuade plaintiff to keep her accounts with him and establish a relationship with her as her investment advisor. (Doc. 26, at 4–5).

At the September 29th meeting, defendant gave plaintiff some documents to sign that would establish a contractual relationship between them. Plaintiff never signed those documents. Defendant alleges that he called plaintiff twice between September 29, 2000 and January 26, 2001 "to inquire as to the status of the still outstanding paperwork." (Doc. 26, at 6).

Plaintiff's divorce was finalized in November, 2000. Plaintiff alleges that she thought defendant would continue to manage her brokerage account after the divorce, even though she had not signed the paperwork memorializing any such agreement between defendant and plaintiff. She alleges that defendant took no action to manage her account, resulting in substantial losses. She claims that defendant understood at the September 29, 2000 meeting that "he had both discretion and a duty to act since he was in a fiduciary relationship to the plaintiff." (Doc. 35, at 2).

Defendant alleges that he understood that plaintiff did not want him to send her his proposed investment plan until January, 2001 because she would be traveling over the holidays and did not want a new investment plan until her divorce was finalized. On January, 26, 2001, he sent her an investment plan. He alleges that he had prepared the plan in November, 2000, but, per plaintiff's request, had waited to send it. Plaintiff disputes this allegation, claiming that she believed that defendant would send her his investment plan in November, 2000 and that, meanwhile, he was continuing to manage her accounts according to her instruction to do so conservatively.

Plaintiff did not contact defendant after she received his proposed investment plan. By March, 2001, plaintiff's account had decreased in value by approximately $297,911. (Doc. 26, at 8). Plaintiff met with defendant at that time, and was "so upset" that she "was losing so much money" that she ordered defendant to "just sell something." (Doc. 28 Exh. B, at 96–97). She admitted that she did not know that the stock market "was going down overall during that period." (*Id.* at 97). In late March, 2001, plaintiff transferred management of her investments to another investment advisor. In March, 2002, she filed the instant action for breach of contract and negligent handling of plaintiff's investments.

## STANDARD OF REVIEW

Summary judgement must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be accepted as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## DISCUSSION

### A. Breach of Contract Claim

■ Plaintiff claims that defendant and his firm breached their contractual obli-

gations to her "by failing to handle her investments properly, to follow her instructions with respect to her investments and by failing to provide adequate supervision." (Doc. 1, at 7). Plaintiff, however, does not reference any contract terms that she alleges defendant breached. This court is therefore left to guess as to what the alleged contract between plaintiff and defendant was.

■ The record establishes that there was some kind of contractual agreement between defendant and the Devonshires prior to their divorce. Apparently a document memorializing this contractual relationship did exist, though neither party has made it a part of the record.[1] Plaintiff, however, does *not* argue that the contractual relationship between her and defendant existed prior to her divorce and continued after her marriage ended. She merely asserts that there was a contract between her and defendant and that defendant breached that contract.

■ It is not necessary, of course, for a contract's terms to be expressed formally or written for it to be valid and enforceable. *See Rutledge v. Hoffman*, 81 Ohio App. 85, 87, 75 N.E.2d 608 (1947) ("In the absence of a statute requiring a contract to be evidenced in a certain way, it is ordinarily unnecessary to reduce the agreement to formal language, either written or oral."); *see also Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 413 (N.D.Ohio 1976). Defendant, however, has submitted evidence that he presented

---

1. Defendant references, but does not attach, an "Investment Advisor Agreement" between him and the Devonshires. Defendant provides copies of two contracts that bear plaintiff's name and signature: the first is an application for a joint Charles Schwab account, which she and her former husband signed on December 20, 1994, and the second is an application for an individual Charles Schwab account, which plaintiff alone signed on April 1, 1996. (Doc. 28 Exhs. 1 and 2). These contracts appear to be between plaintiff and Charles Schwab, not between plaintiff and defendant. Each contract includes an attached agreement between defendant and Charles Schwab, authorizing defendant to direct trades on the accounts. (*Id.*). These agreements do not create any contractual relationship between plaintiff and defendant.

plaintiff with documents that would have created a contract between them. The record is clear that plaintiff possessed, but did not sign, those documents. Plaintiff has not shown that there was any other contract between them. She simply fails to provide any factual support for her claim that defendant breached any contract. Therefore, defendant's motion for summary judgment as to plaintiff's breach of contract claim will be granted.

### B. Negligence Claim

Plaintiff claims that "[t]his case is about negligence and the management of plaintiff's affairs . . . . Mr. Johnston did nothing to protect the plaintiff [from the volatile stock market]" (Doc. 35, at 6). Plaintiff further alleges that "[i]nvestment advisors like the defendants can be liable for negligence just like doctors, lawyers and accountants." (*Id.*).

Plaintiff has not alleged a claim for breach of fiduciary duty. It does appear, however, that defendant was in a special position to direct trading for plaintiff's investments, despite the lack of a contract authorizing him specifically to do so. Defendant did not take any action with regard to plaintiff's investment account during the relevant time period. Plaintiff does not, therefore, contend that defendant negligently advised her or misled her in suggesting an inappropriate investment strategy. She claims simply that he should have taken action when her account began losing money, and failed to do so. Plaintiff, however, has presented no evidence of a standard of care that would have required defendant to take action on her behalf.

Plaintiff states that her claim is akin to a claim against a doctor, lawyer, or accountant. In light of her characterization, it is appropriate to analyze plaintiff's negligence claim as a claim for professional malpractice. *See Reiner v. Rosenthal*, No.

85–1412, 1986 WL 17717, at *1 (6th Cir. 1986) ("The plaintiff's present claim arises in the course of a professional relationship, and it is therefore a claim for malpractice."); *Dymm v. Cahill*, 730 F.Supp. 1245, 1262 (S.D.N.Y.1990) ("[P]laintiff alleges common law negligence against [defendant] for his failure to use reasonable care in advising plaintiff to invest . . . . This claim in effect is one for accountant or investment advisor malpractice."); *Erlich v. First Nat'l Bank of Princeton*, 208 N.J.Super. 264, 291, 505 A.2d 220, 235 (1984) ("[Defendant] offered plaintiff professional investment advisory services . . . . It is therefore the degree of care, knowledge and skill expected of professional investment advisers to which we must look for the standard of care.").

■ When a negligence claim involves professional skill or judgment, the plaintiff bears the burden of establishing the prevailing standard of care, the professional's deviation from that standard, and that the negligence was the proximate cause of the injury. *See Berdyck v. Shinde*, 66 Ohio St.3d 573, 579, 613 N.E.2d 1014 (1993) ("[I]f a condition by its nature requires the application of knowledge and skill superior to that of the ordinary person, one who possesses that superior knowledge and skill and who fails to employ it for the benefit of another when their relation requires it will be held liable for injuries proximately resulting from that failure."); *see also Vahila v. Hall*, 77 Ohio St.3d 421, 674 N.E.2d 1164 (1997).

■ Expert testimony is generally required to establish the standard of care in professional malpractice and negligence cases. *Sturm v. Univ. of Cincinnati Med. Ctr.*, 137 Ohio App.3d 557, 562, 739 N.E.2d 364 (2000) (citing *Berdyck*, 66 Ohio St.3d at 578, 613 N.E.2d 1014). This is because "a person of superior knowledge and skill must employ that degree of care and skill

that a person of the same learning and experience of ordinary care, skill, and diligence should employ in like circumstances." *Sturm*, 137 Ohio App.3d at 562, 739 N.E.2d 364. However, expert opinions are not required to establish the level of care and skill to be applied in situations where the conduct at issue is within the jury's general knowledge and experience. *Jones v. Hawkes Hosp. of Mt. Carmel*, 175 Ohio St. 503, 506–07, 196 N.E.2d 592 (1964); *Baiko v. Mays*, 140 Ohio App.3d 1, 7, 746 N.E.2d 618 (2000).

In the instant case, plaintiff alleges that defendant failed to act when he should have to prevent losses to her investment account. Plaintiff alleges that she relied on defendant to make decisions about her investment account because she believed that he had knowledge and experience superior to hers. To establish the standard of care required of defendant in this situation, plaintiff should have provided evidence of what an ordinary investment advisor with superior knowledge and experience in investments and securities accounts would have done in defendant's situation.

Courts have required expert opinions to establish the standard of care in a wide variety of professional malpractice cases. *See, e.g., Racicky v. Farmland Indus., Inc.*, 328 F.3d 389, 394–95 (8th Cir.2003) (holding that expert testimony was required to establish the standard of care for a dairy feed specialist); *Liser v. Smith*, 254 F.Supp.2d 89, 102 (D.D.C.2003) (holding that expert testimony is required to establish the standard of care for police officers); *Wausau Business Ins. Co. v. Turner Const. Co.*, 151 F.Supp.2d 488, 493 (S.D.N.Y.2001) (holding that expert testimony was required to establish standard of care for architect, even when plaintiff was not a client of that architect); *Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.*, 439 Mass. 387, 402–03, 788 N.E.2d 522, 536 (Mass.2003) (holding that expert testimony is required to establish the standard of care for an insurer). The instant case likewise calls for a showing of the standard of care required of a reasonable professional investment advisor in defendant's situation. I therefore find that essential to plaintiff's claim of investment advisor negligence is the establishment of the standard of care through expert testimony.

Because she has not provided such testimony, plaintiff has failed to establish any genuine issue of material fact as to whether defendant's conduct during late 2000 and early 2001 violated the applicable standard of care for professional investment advisors. Defendants' motion for summary judgment as to plaintiff's claim of negligence, therefore, will be granted.

## CONCLUSION

In light of the foregoing, it is hereby

ORDERED THAT

Defendants' motion for summary judgment be, and the same hereby is granted.

So ordered.