KARRAS, Appellant, et al.

v.

CRAWFORD COUNTY BOARD OF MENTAL RETARDATION AND
DEVELOPMENTAL DISABILITIES et al., Appellees.

[Cite as *Karras v. Crawford Cty. Bd. of Mental Retardation & Developmental Disabilities,* 169 Ohio App.3d 37, 2006-Ohio-5036.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–761

Decided Sept. 28, 2006.

**38**

Strip, Hoppers, Leithart, McGrath & Terlecky Co., L.P.A., and Nelson E. Genshaft, for appellant.

Jim Petro, Attorney General, and Michelle T. Sutter, for appellee Ohio Department of Mental Retardation and Developmental Disabilities.

BROWN, Judge.

{¶ 1} Appellant, Edward J. Karras, Ph.D., appeals from the judgment of the Franklin County Court of Common Pleas affirming a decision by appellee Ohio Department of Mental Retardation and Developmental Disabilities ("Ohio MRDD"), which adopted an arbitrator's recommendation dismissing the proceedings for lack of jurisdiction.

{¶ 2} Appellant is a psychologist licensed by the state of Ohio. On June 26, 1998, appellant, on behalf of his sole proprietorship, Karco Associates ("Karco"), signed a "professional service agreement" with appellee the Crawford County Board of Mental Retardation and Developmental Disabilities ("Crawford MRDD"), under which appellant contracted to provide psychological services, up

to two days per week, to persons served by Crawford MRDD. The two-year agreement commenced on July 1, 1998, and ended on June 30, 2000.

{¶ 3} The parties entered into a similar agreement that commenced on July 1, 2000, and ended on June 30, 2002. In May 2002, the parties signed another agreement commencing on July 1, 2002, and ending on June 30, 2003.

{¶ 4} By letter to appellant dated June 20, 2002, Crawford MRDD informed him that it had taken action "to rescind and withdraw the one-year contract made to Karco Associates at the May 16, 2002 Board Meeting." On June 25, 2002, appellant sent Crawford MRDD written notice alleging a breach of the 2000–2002 contract and demanding arbitration as outlined under R.C. 5126.036. Crawford MRDD sent appellant a letter, dated July 17, 2002, rejecting appellant's reliance on the arbitration/mediation provisions of R.C. 5126.036. By letter dated September 6, 2002, Ohio MRDD informed appellant and counsel for Crawford MRDD that because of a disagreement between the parties as to whether R.C. 5126.036 applied to the contract between appellant and Crawford MRDD, "[w]e have determined that the issue of whether the provisions of R.C. 5126.036 apply * * * must be presented to the mediator/arbitrator for consideration in accordance with the provisions of R.C. 5126.036."

{¶ 5} Crawford MRDD subsequently filed an action for declaratory judgment in the Crawford County Court of Common Pleas, seeking a ruling that the employment dispute between it and appellant was not subject to R.C. 5126.036. In response, appellant filed a motion for judgment on the pleadings. The Crawford County Court of Common Pleas granted appellant's motion for judgment on the pleadings and dismissed the case, finding that "in accordance with R.C. 5126.036, the parties are required to present the threshold issue to mediation/arbitration to determine if the case sub judice properly falls under that statute."

{¶ 6} The matter was then submitted to an arbitrator selected by the parties. Crawford MRDD filed a motion with the arbitrator, requesting that the matter be dismissed for lack of jurisdiction or that the arbitrator bifurcate the hearing, first addressing whether the arbitrator had jurisdiction under R.C. 5126.036 to consider the dispute before addressing any of the substantive claims raised by appellant. Appellant filed a reply to Crawford MRDD's motion, arguing that the motion to bifurcate should be denied and that the case should be heard on the merits.

{¶ 7} On December 15, 2004, the decision of the arbitrator was mailed to the parties. That decision included the following factual findings:

The Crawford County MR/DD Board (hereinafter Board) and Doctor Edward J. Karras (hereinafter Karras) had a relationship by which the Board,

pursuant to a written employment agreement, contracted with Karras to provide services to Board clients. He was an independent contractor of the Board and performed activity that could have been done either under a service contract, as an employee of [the] Board, or as a[n] independent contractor. Under any scenario, Karras performed psychological services for the Board.

Karras did not bill the Ohio Department of Jobs and Family Services for the services rendered. The bills for his service were submitted by the Board, they being the ones that were certified provider with a Medicaid Provider Agreement.

\* \* \*

Under Ohio law, the Community Alternate Funding System (CAFS) provides services to mentally retarded or developmentally disabled individuals in the various counties. It appears undisputed that psychological services provided by Doctor Karras were CAFS services billed to Medicaid through the Board.

The Ohio Administrative Code outlines how an individual or entity can become a Medicaid provider, pursuant to a provider agreement with the Ohio Department of Job and Family Services (ODJFS). When a provider of services signs an agreement, the ODJFS assigns a unique provider number used for billing and monitoring purposes. It is not disputed, as is germane hereto, that Karras has never had a Medicaid Provider Agreement nor has he been individually certified as a CAFS provider. At any rate, the entity providing the service is who bills ODJFS directly for those services.

\* \* \*

Karras was required to be at the MR/DD Board two days a week between 9 and 3. He was compensated for those six hours, plus an additional two hours for travel. He received pay regardless of whether he performed any psychological services during the time he was at the Board. Such pay was paid regardless of whether his time was spent performing billable CAFS activities, Board activities, or driving. \* \* \*

It appears that both parties clearly treated Karras as an independent contractor. \* \* \* It is clear to the Arbitrator that Karras could not separately bill for the providing of CAFS services, but that those were submitted by the Board. Karras was paid on an hourly basis regardless of the eligibility of his service for reimbursement.

\* \* \* While there is no question that Karras provided services, and in that context was certainly a "provider," there is also no question that he was an independent contractor, but not a certified provider. While independent of the Board, and rightly so, in providing the services to clients that he did, it is clear that he "worked for the Board" and that he did not bill separately for his services.

{¶ 8} The arbitrator concluded that Crawford MRDD "is the CAFS provider providing habilitation services to eligible recipients" and that the "only way that Karras could provide services in this instance is through a certified CAFS provider, in this case, the Board." The arbitrator further found that the statute did not evince intent that all employment disputes be resolved through the arbitration process; rather, "the legislature intended that service providers with their own CAFS numbers would continue in that relationship while an inexpensive and quick method of resolution was applied." Accordingly, the arbitrator found that appellant was not a "provider" under R.C. 5126.036, and, thus, the arbitrator determined that he was without jurisdiction over the matter.

{¶ 9} Ohio MRDD adopted the decision of the arbitrator and dismissed the matter for lack of jurisdiction. On March 18, 2005, appellant filed an appeal with the trial court from the decision of Ohio MRDD. On April 27, 2005, appellant filed a motion for summary judgment. On April 28, 2005, Crawford MRDD filed a motion to dismiss pursuant to Civ.R. 12(B)(6). Ohio MRDD filed a notice of appearance of counsel and a motion to strike appellant's motion for summary judgment.

{¶ 10} By decision filed June 10, 2005, the trial court granted Crawford MRDD's motion to dismiss. The court further denied appellant's motion for summary judgment, holding that "appellant has failed to show that the arbitrator's construction of O.R.C. 5126.036—which was adopted by ODMR/DD—was incorrect." Finally, the court held that Ohio MRDD's motion to strike was moot. By judgment entry filed June 28, 2005, the trial court granted Ohio MRDD's motion to dismiss and Crawford MRDD's motion to dismiss.

{¶ 11} On appeal, appellant sets forth the following five assignments of error for review:

1. The trial court erred when it determined as a matter of law in its Decision filed June 10, 2005 and Judgment Entry filed June 28, 2005 that Dr. Karras failed to show that the Arbitrator's construction of R.C. 5126.036 was incorrect.

2. The trial court erred when it affirmed the decision of the Director of the Department dated March 4, 2005, which adopted the decision of the Arbitrator dated December 15, 2004. The Arbitrator had no authority to make an initial determination of his jurisdiction as a threshold issue before deciding the merits of Dr. Karras' claim against the Board and the Department.

3. The trial court erred when it determined that the Arbitrator's decision that the billing practices for Medicaid reimbursement by the Board was a determining factor in classifying Dr. Karras as someone other than a service provider.

4. The trial court erred when it determined that the Arbitrator's decision was correct, since the decision ignored Ohio law that required all county boards to update their service contracts to provide for the procedural provisions of ORC 5126.036 no later than July 1, 2002.

5. The trial court erred when it determined that the procedural errors committed by the Arbitrator in the proceeding before the Department were harmless and the time limits imposed by statute were merely "directory" and not substantive.

{¶ 12} Appellant's first and third assignments of error are interrelated and will be considered together. Under these assignments of error, appellant challenges the trial court's finding that appellant failed to demonstrate that the arbitrator's construction of R.C. 5126.036, which was adopted by Ohio MRDD, was incorrect. Appellant maintains that pursuant to R.C. 5126.036, he was performing psychological services as a "provider" under a "service contract" and therefore was entitled to arbitration of the contract dispute.

{¶ 13} In general, "statutory construction is a legal issue that appellate courts review de novo." *Covert v. Ohio Auditor*, Scioto App. No. 05CA3044, 2006-Ohio-2896, 2006 WL 1570598, at ¶ 18. Further, in interpreting a statute, "courts must give effect to the words explicitly used in a statute, rather than deleting words or inserting words not used." Id.

{¶ 14} R.C. 5126.036(B) sets forth the mediation and arbitration procedures for an "aggrieved party" under a service contract and states:

An aggrieved party that seeks to require the other party to take or cease an action under a service contract that causes the aggrieved party to be aggrieved, a person or government entity aggrieved by the refusal of a county board of mental retardation and developmental disabilities to enter into a service contract with the person or government entity, or a person or government entity aggrieved by a county board's termination of a service contract between the person or government entity and the county board and the other party shall follow the following mediation and arbitration procedures[.]

{¶ 15} Pursuant to R.C. 5126.036(B)(7), if a conflict between parties to a service contract is not resolved through the mediation process, "the mediator/arbitrator shall arbitrate the conflict." Following the recommendation of the arbitrator/mediator, "the department [Ohio MRDD] shall adopt, reject, or modify the mediator/arbitrator's recommendation." R.C. 5126.036(B)(9). Further, "[t]he department's actions regarding the mediator/arbitrator's recommendation and response are a final adjudication order subject to appeal to the court of common pleas of Franklin county under section 119.12 of the Revised Code, except that the court

shall consider only whether the conclusions of law the department adopts are in accordance with the law." Id.

{¶ 16} R.C. 5126.036(A)(5) defines "provider" as "a person or government entity that provides services to an individual with mental retardation or other developmental disability pursuant to a service contract." Under R.C. 5126.036(A)(6), "service contract" is defined as "a contract between a county board of mental retardation and developmental disabilities and a provider under which the provider is to provide services to an individual with mental retardation or other developmental disability."

{¶ 17} We first consider the general terms of the "professional service agreement," which set forth the responsibilities of appellant and Karco and Crawford MRDD. Under the agreement, Karco (referred to as the "provider") was responsible for providing psychological services to "Board-referred clients or enrollees" up to two days a week, from 9:00 a.m. to 3:00 p.m., "according to professional and legal standards and requirements." Karco was also responsible for its own professional-malpractice insurance and comprehensive liability insurance and for wages and benefits regarding its own personnel. Crawford MRDD's responsibilities under the agreement included providing a "client-to-psychologist referral system," a client schedule "as to session times," a "client load," and a quiet office area for use with clients.

{¶ 18} In the proceedings before the arbitrator, Crawford MRDD asserted that the provider agreements between the parties did not constitute "service contracts," because they did not meet the formal requirements of R.C. 5126.035(B), including (1) a general operating component and (2) an individual-service-needs addendum. The arbitrator, however, rejected Crawford MRDD's contention that the lack of a general operating agreement and addendum to the contract was dispositive, concluding instead that the "underlying factual basis must be controlling."

{¶ 19} We agree with the arbitrator that the failure to include those items in the agreements at issue is not dispositive, especially in light of the fact that Crawford MRDD, the party challenging arbitration on the basis of what it alleged to be fatal omissions, apparently drafted the agreements. Further, the operating component and service-needs addendum were not statutorily required at the time the parties signed the 2000 agreement.[1]

---

1. The effective date of R.C. 5126.035 was June 6, 2001. 2001 Am.Sub.H.B. No. 94, 149 Ohio Laws, Part III, 5119, 5736. 1991 Am.Sub.H.B. No. 405, Section 42(B), 149 Ohio Laws, Part IV, 6738, provides: "To the extent a service contract entered into between a county board of mental retardation and developmental disabilities and a provider prior to June 6, 2001, is inconsistent with state or federal law, the county board and provider shall revise the service

{¶ 20} Regarding the "underlying factual basis," the arbitrator found that both parties treated appellant as an independent contractor. In this respect, the arbitrator noted that Karras was "independent of the Board, and rightly so, in providing the services to clients," and, thus, "there is no question that [appellant] provided services, and in that context was certainly a 'provider.'" However, in considering Ohio's method of providing services under the Community Alternative Funding System ("CAFS"), the arbitrator found determinative the fact that the "only way" appellant could provide services in the instant case was "through a certified CAFS provider," i.e., Crawford MRDD. In the proceedings before the arbitrator, Crawford MRDD had argued that a significant fact in determining whether appellant was a "provider" was that Crawford MRDD was the sole certified provider of CAFS services in Crawford County, responsible for submitting cost reports and billing to ODJFS for purposes of reimbursement. In construing the statute at issue, the arbitrator agreed, in effect equating "provider" as defined in R.C. 5126.036 with a certified CAFS provider under Ohio Adm.Code Chapter 5123:2–15.

{¶ 21} In response, appellant argues that at the time of the contracts at issue, there were no requirements under R.C. 5126.036 for a "provider" to be CAFS-certified or to submit invoices directly to ODJFS. Upon review, we agree with appellant that the statute does not contain those requirements.

{¶ 22} As noted above, the arbitrator found that the psychological services provided by appellant were "CAFS services billed to Medicaid through [Crawford MRDD]." Former Ohio Adm.Code 5123:2–15–34 [2] set forth the CAFS "requirements for the provision of billable medicaid-covered psychology services which may be provided by an agency certified according to rule 5123:2–15–01 of the Administrative Code." Ohio Adm.Code 5123:2–15–34(A). The rule contemplated that certain costs involving services provided by a psychologist were to be "captured in the cost report that is submitted by the CAFS provider." Ohio Adm.Code 5123:2–15–34(B). Psychology services were to be delivered by "an appropriately licensed, certified or registered psychologist." Ohio Adm.Code 5123:2–15–34(C).[3]

{¶ 23} The documentation for CAFS billing and cost reports for psychological services provided to individuals required certain elements, including (1) the date the service was provided, (2) the name of the individual for whom the service was

---

contract to make it comply with the procedural requirements of section 5126.035 of the Revised Code. The service contract shall be revised not later than July 1, 2002."

2. Ohio Adm.Code 5123:2–15–34 has been repealed.

3. It is undisputed that appellant is a licensed psychologist under the laws of Ohio.

provided, (3) the outcome or response of the service, (4) the duration in time of the service provided, and (5) the "identification of the service provider by signature or initials on each entry of service delivery." Ohio Adm.Code 5123:2–15–34(D)(2)(e). The record before the arbitrator included exhibits indicating that appellant signed billing form documentation as the "provider," and it is not disputed that Crawford MRDD then submitted that documentation for reimbursement purposes.

{¶ 24} Although Crawford MRDD, as the "CAFS provider," was responsible for submitting billing documents to ODJFS, we do not construe the relevant provisions of the Ohio Administrative Code or the language of R.C. 5126.036, including the definition of "provider" (i.e., "a person or government entity that provides services to an individual with mental retardation or other developmental disability pursuant to a service contract"), as requiring a provider of services to also be the certified CAFS provider.[4] Presumably, had the legislature intended such a certification requirement, it could have expressly provided so under the statute.[5] Thus, in construing the definition of "provider" under the statute, we reject the arbitrator's reliance upon the import of billing practices and appellant's lack of status as a certified CAFS provider.

{¶ 25} While we disagree with that aspect of the arbitrator's decision, we do not disturb the arbitrator's determination that the parties treated appellant as an independent contractor rather than an employee. Regarding issues of diagnosis and treatment, the arbitrator could have reasonably concluded that Crawford MRDD did not control the method or means of the professional psychological services rendered. Further, under the terms of the agreement, Karco was responsible for maintaining its own professional liability insurance and for paying any wages and benefits of personnel, and there is no indication that appellant received any fringe benefits (e.g., vacation, pension benefits, etc.) from the county agency. Appellant also received a 1099–MISC statement from Crawford County, suggesting that the parties treated the relationship as that of an independent contractor. As also noted above, appellant was identified as the provider in the

4. The arbitrator also stated in his decision that appellant "has never had a Medicaid Provider Agreement." Appellant disputes this finding, asserting that he has a Medicaid provider agreement and a number assigned to him by ODJFS. On appeal, Ohio MRDD does not appear to challenge the fact that appellant had a Medicaid provider agreement; rather, it argues that the fact that appellant "may have been a certified Medicaid provider for other purposes is immaterial to whether he is a certified provider for CAFS services."

5. Appellant notes that effective October 16, 2003, Ohio MRDD did prescribe certification requirements for providers of home- and community-based services ("HCBS"). Specifically, pursuant to Ohio Adm.Code 5123:2–9–04(B)(11), "provider" is defined to mean "a person who has a Medicaid provider agreement issued by ODJFS and is certified by ODMRDD to provide HCBS."

contract, and he signed authorization forms to be used for reimbursement ("professional services documentation") as the "provider." Considering the indicia of control exercised by Crawford MRDD over appellant, the record supports the arbitrator's finding that appellant was an independent contractor.

{¶ 26} In construing the relevant statutory language and its application to the facts of this case, including a determination that the services at issue were rendered by appellant as an independent contractor and not an employee of Crawford MRDD, we conclude that appellant acted as a "provider" of psychological counseling services to individuals with disabilities pursuant to a service agreement as defined by R.C. 5126.036. Accordingly, we hold that the trial court erred in adopting the determination of Ohio MRDD dismissing this matter for lack of jurisdiction, and appellant's first and third assignments of error are sustained. In light of our disposition of those assignments of error, the issues raised under appellant's second, fourth, and fifth assignments of error are moot.

{¶ 27} Based upon the foregoing, appellant's first and third assignments of error are sustained, the second, fourth, and fifth assignments of error are rendered moot, the judgment of the Franklin County Court of Common Pleas is reversed, and this matter is remanded to that court for further proceedings in accordance with law, consistent with this opinion.

Judgment reversed
and cause remanded.

PETREE and McGRATH, JJ., concur.