OPINION
{¶ 1} Dayspring of Miami Valley, a nursing home facility, appeals from a judgment of the Clark County Common Pleas Court that denied its administrative appeal of a decision of the Department of Health denying Dayspring's request to discharge a patient, Nell Shepherd, from its facility. Dayspring contends that the decision of the Department of Health Hearing Officer is contrary to law and not supported by the evidence. Thus, it contends that the decision of the trial court to affirm is contrary to law.
 {¶ 2} We conclude that the trial court did err by affirming the decision of the Hearing Officer, because that decision is contrary to the provisions of R.C. 3721.13(A)(30). For this reason, we sustain Dayspring's assignments of error, and we reverse the judgment of the Clark County Court of Common Pleas affirming the agency's order denying the discharge. The trial court is directed to enter a judgment directing the agency to approve Dayspring's request to discharge Shepherd from its facility.
 I {¶ 3} Dayspring of Miami Valley is a nursing home facility. Nell Shepherd was *Page 3 
admitted to Dayspring in January of 2004. An Agreement executed by and between Dayspring and Shepherd provided that Shepherd would be responsible for all charges incurred while a resident of the facility. In February, 2004, Shepherd applied for Medicaid coverage, which was denied because Shepherd owned a home. Following the sale of the house, Shepherd re-applied and was approved for Medicaid, with coverage being made retroactive to August of 2004. Shepherd's financial obligations to Dayspring have been met since the inception of her coverage under Medicaid. However, Shepherd accumulated a bill with a total unpaid balance of $33,026.25 for the care prior to the effective date of her Medicaid coverage.
 {¶ 4} On October 29, 2004, Dayspring issued notice to Shepherd, pursuant to R.C. 3721.16, that it was discharging her as a resident due to non-payment of her bill. Shepherd requested a hearing before the Department of Health contesting the proposed challenge. A hearing was held in November before an agency Hearing Officer. Following the hearing, the Hearing Officer concluded that Dayspring had sufficiently demonstrated that Shepherd had failed to make payment. However, the Hearing Officer denied the requested discharge after considering other factors and essentially determining that Dayspring should be equitably estopped from discharging Shepherd.
 {¶ 5} Dayspring filed a notice of appeal to the Clark County Common Pleas Court pursuant to R.C. 119.12. The trial court affirmed the decision of the Hearing Officer finding that it was "supported by reliable, probative and substantial evidence and was in accordance with law." From this decision, Dayspring appeals.
 II *Page 4 {¶ 6} Dayspring's First Assignment of Error states as follows:
 {¶ 7} "THE COURT MUST REVERSE THE DECISION BECAUSE THE HEARING OFFICER IMPROPERLY EXCEEDED HIS LIMITED, STATUTORY AUTHORITY BY DETERMINING THAT `OTHER RELEVANT FACTORS' COULD BAR DAYSPRING'S RIGHT TO DISCHARGE APPELLEE DESPITE THE UNDISPUTED FACT THAT DAYSPRING HAD CLEARLY ESTABLISHED A RIGHT TO DISCHARGE APPELLEE PURSUANT TO R.C. § 3721.13(A)(30)(e)."
 {¶ 8} Dayspring contends that the decision of the Hearing Officer is based upon factors not provided for by statute, and that it is therefore contrary to law, requiring reversal of both the administrative decision and the judgment of the trial court affirming that decision.
 {¶ 9} Dayspring sought to discharge Shepherd for non-payment of her bill pursuant to R.C. 3721.13(A)(30), which provides certain rights to nursing home residents. That statute provides, in pertinent part that a resident has the "right not to be transferred or discharged from the home unless the transfer is necessary because of one of the following:
 {¶ 10} "* * *
 {¶ 11} "(e) The resident has failed, after reasonable and appropriate notice, to pay or to have the medicare or medicaid program pay on the resident's behalf, for the care provided by the home. A resident shall not be considered to have failed to have the resident's care paid for if the resident has applied for medicaid, unless both of the following are the case:
 {¶ 12} "(i) The resident's application, or a substantially similar previous *Page 5 
application, has been denied by the county department of job and family services.
 {¶ 13} "(ii) If the resident appealed the denial pursuant to division (C) of section 5101.35 of the Revised Code, the director of job and family services has upheld the denial."
 {¶ 14} Residents who wish to challenge a nursing home's notice of discharge, may request a hearing before a Hearing Officer of the Department of Health. R.C. 3721.161(A). At such a hearing, the parties may present testimony and written material "to show by a preponderance of the evidence just cause why the proposed transfer or discharge complies [or does not comply] with division (A)(30) of section 3721.13
of the Revised Code." Ohio Admin. Code Chapter 3701-61-04(D).
 {¶ 15} Thereafter, the party aggrieved by the decision of the Hearing Officer may file an administrative appeal to the common pleas court pursuant to R.C. 119.12. R.C. 3721.162(D). "When a common pleas court reviews an administrative agency's decision pursuant to R.C. 119.12, the court must presume that the agency's decision is correct." Harris v.Miami Cty. Sheriff's Dept., 160 Ohio App.3d 435, 437-438,2005-Ohio-1713, ¶ 13. "If, after reviewing the entire record before the agency, the court finds that the agency's decision was supported by a preponderance of substantial, reliable, and probative evidence, the court must affirm the agency's decision." Id.
 {¶ 16} As noted above, following the hearing requested by Shepherd, the Hearing Officer found that Dayspring presented sufficient evidence showing that Shepherd had failed to make payment under the provisions of R.C. 3721.13(A)(30)(e). The Hearing Officer found that Shepherd had a bill of $33,026.25, which she had failed to pay or to have Medicaid pay on her behalf. The Hearing Officer further found that "the exceptions *Page 6 
contained in R.C. § 3721.13(A)(30)(e)(i) and (ii) do not apply because resident's February 2004 Medicaid application was denied by Clark County Jobs and Family Services and was not appealed." Thus, the Hearing officer found that "under the statute resident must be deemed to have failed to pay for her care and/or failed to have Medicaid pay for her care up until August 1, 2004."
 {¶ 17} However, the Hearing Officer did not end his inquiry at that point. Instead, he went on to find as follows:
 {¶ 18} "Other relevant factors must be taken into consideration in making a final determination on the proposed discharge which are as follows:
 {¶ 19} "1. The facility in January 2004 admitted resident at a rate of $184.00/day without checking on resident's finances or the finances of her daughter or their ability to pay the facility's charges.
 {¶ 20} "2. Resident, through her daughter, almost immediately (i.e. in February 2004) applied for Medicaid but ultimately was denied eligibility. No doubt the Facility was aware of this application and like the daughter, felt it would be approved and therefore there would be no problem with payment.
 {¶ 21} "3. The facility was aware of Medicaid's initial denial but made no demands for payment thereafter (other than their continued monthly statements); continued to allow resident to remain at the facility and did not initiate collection or discharge proceedings.
 {¶ 22} "4. The facility was notified that upon reapplication, resident had been approved for Medicaid effective August 1, 2004 and Residenthas been current since said date. *Page 7 
 {¶ 23} "5. The sole reason for the discharge is the inability to collect the approximate $33,000.00 balance because `we can't carry a balance that large' and, after all, `they are a business.' However the facility has carried a balance from day one and prior to August 1, 2004 it was some $17,000.00 higher than it is now. After the balance was `frozen' and payments were being made on a current basis, the facility waited three (3) months before serving its notice on resident. In addition, if resident is discharged, it is highly unlikely that the facility will recoup any of the balance due it since resident's resources and the Medicaid payments will go to the new facility but if she remains at the facility, minimally the balance will not increase and perhaps * * * * can either be paid in full or greatly reduced.
 {¶ 24} "6. There appears to be no reason for a discharge other than money because the staff at the facility seem to be exceptionally fond of resident and no other reasons were set forth in the notice or presented at the hearing.
 {¶ 25} "Based on the above considerations the undersigned concludes that the facility was complicit in helping to create the initial balance (i.e. at least up to August 1, 2004) by not making adequate up front provisions for payment and by relying on a Medicaid application of which it had notice and in which it had involvement. The facility cannot on the one hand help create the debt and then suddenly, upon denial of the Medicaid application expect immediate or full payment. The facility must come with `clean hands' which it has not. Further the facility, upon notified of Medicaid's denial, continued to provide resident with room, board and care; took no steps to collect the monies due it such as working out a payment plan * * * and did not seek to discharge resident. It simply let things ride while the debt continued to escalate. The above *Page 8 
actions and inactions of the Facility constitute waiver, estoppel, laches and negligence."
 {¶ 26} Following Dayspring's appeal to the Common Pleas Court, that court determined that the Hearing Officer's findings were supported by reliable, probative and substantial evidence and that the decision was in accordance with law. The trial court also stated that R.C. 3721.13(A)(30) "by its language, requires that the nursing home not only show one of the reasons enumerated [thereunder] is present, but also that the nursing home show that the reason makes discharge necessary." The trial court noted that Dayspring had failed to show that the discharge was necessary.
 {¶ 27} Dayspring contends that both the Hearing Officer and the trial court exceeded the scope of the statute. Dayspring has not cited, and we have not found, case law regarding the application of R.C.3721.13(A)(30)(e). However, we agree with Dayspring that the decision denying its right to discharge Shepherd is not in accord with the law.
 {¶ 28} Courts must look to the specific language contained in a statute, and then, if the language is not ambiguous, apply the clear meaning of the words used there. Roxane Laboratories, Inc. v.Tracy, 75 Ohio St.3d 125, 127, 196-Ohio-257. We do not read the statute as requiring that a facility, in addition to demonstrating the existence of one of the factors set forth in R.C. 3721.13(A)(30), also offer additional proof that the factor made discharge necessary. Instead, we read it as stating that necessity is shown merely by demonstration of the existence of one of the factors. Had the General Assembly utilized language in the conjunctive requiring a showing of necessityand one of the enumerated conditions we would be persuaded by the trial court's reasoning. However, the statute is not structured in that manner. Instead, it reads that a facility *Page 9 
must show that transfer is necessary because one of the enumerated conditions exists.
 {¶ 29} While the statute does provide some protection for nursing home residents, in that it only permits transfer or discharge under certain circumstances, the portion relevant to this appeal specifically permits discharge for non-payment. Further, the statute does not refer to any equitable defenses nor does it cite any factors to be considered in determining whether discharge is appropriate. Indeed, as noted above, the Administrative Code provides that in order to transfer or discharge a resident, a nursing home facility need only present evidence demonstrating compliance with R.C. 3721.13(A)(30).
 {¶ 30} When reviewing a trial court's judgment in an administrative appeal, an appellate court is "limited to determining whether the trial court abused its discretion in reviewing the administrative order."Harris, supra, at 13. Absent an abuse of discretion, the trial court's decision must be affirmed. Id. However, the construction of a statute is a question of law. Brennaman v. R.M.I. Co. (1994), 70 Ohio St.3d 460,466. Therefore, an appellate court need not give deference to a lower court's interpretation, but instead, applies a de novo standard of review. Karras v. Crawford Cty. Bd. Of Mental Retardation Developmental Disabilities, 169 Ohio App.3d 37, 2006-Ohio-5036, ¶ 13. We conclude that by utilizing factors not listed in the statute, the Administrative Code or in case law, the Hearing Officer and trial court have added an additional layer of proof not contemplated by the General Assembly. Therefore, we conclude that the trial court erred as a matter of law by affirming the decision of the Hearing Officer.
 {¶ 31} The First Assignment of Error is sustained. *Page 10 
 III {¶ 32} Dayspring asserts the following as its Second Assignment of Error:
 {¶ 33} "THE COURT MUST REVERSE THE DECISION BECAUSE THE HEARING OFFICER'S FACTUAL FINDINGS REGARDING THE `OTHER RELEVANT FACTORS' ARE NOT SUPPORTED BY SUBSTANTIAL, RELIABLE AND PROBATIVE EVIDENCE AND ARE CONTRARY TO LAW."
 {¶ 34} Dayspring contends that the evidence does not support the decision of the Hearing Officer with regard to the extra-statutory factors cited in his decision.
 {¶ 35} We need not address this argument as it has been rendered moot by our resolution of the First Assignment of Error in Part II, above. Therefore, the Second Assignment of Error is overruled as moot.
 IV {¶ 36} Dayspring's First Assignment of Error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded with instructions to order the agency to enter an order affirming Dayspring's right to discharge Shepherd from its care.
 GRADY and DONOVAN, JJ., concur. *Page 1